E-FILED
Tuesday, 10 March, 2020 02:55:43 PM
Clerk, U.S. District Court, ILCD

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A SanDisk Memory Stick Pro Duo, 1 GB, with serial<br>number BB0629004214D | )<br>)<br>)<br>)<br>)<br>)   Case No. 20-MJ 6045 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Central _____ District of _____ Illinois _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2252A(a)(5)(B) | Possession of Child Pornography |
| 18 USC 1466A | Possession of Obscene Visual Representations of the Sexual Abuse of Children |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Scott Gamboe

*Applicant's signature*

Scott Gamboe, SFO, United States Secret Service

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone to email *(specify reliable electronic means).*

s/Jonathan E. Hawley

Date: 3/10/20

*Judge's signature*

City and state: Peoria, IL

Jonathan E. Hawley, United States Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Special Federal Officer Scott Gamboe, having been duly sworn, state the following:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a detective with the Peoria County Sheriff's Department, located in Peoria, Illinois and have been employed there from June 1998 to present. I am also a Special Federal Officer through the sponsorship of the United States Secret Service (USSS). I am a member of the United States Attorney's Office Central Illinois Cyber Crime Unit based in Peoria, Illinois.  I have received extensive training in criminal investigations, computer crime investigations, computer and electronic device forensic exams, identity theft, fraud, and child pornography investigations. I have conducted numerous investigations, state and federal, involving computer crimes, identity theft, fraud, and child pornography resulting in arrests and seizures. I have also been involved in the execution of numerous search warrants.  In addition, I am an EnCE certified computer forensic examiner and a CCPA certified mobile device examiner. I hold a BA in Criminal Justice from the University Of Illinois – Springfield.

2.      As a Special Federal Officer, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.  During such investigations, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.  I have been involved in numerous child pornography investigations

1

and am very familiar with the tactics used by child pornography offenders who collect child pornographic material and those who seek to exploit children.

     3.     I make this affidavit in support of an application for the issuance of a search warrant to search:

     a.     A SanDisk Memory Stick Pro Duo, 1 GB, with serial number BB0629004214D (hereinafter referred to as SUBJECT DEVICE and further identified in Attachment A). This device was recovered from the hair trimmer kit located in a closet belonging to David L. ROBERTSON, at the Adams Street Living Center, 1924 SW Adams Street in Peoria, Illinois, which is within the Central District of Illinois. It is currently in the possession of the United States Probation Office in Peoria, IL.

     4.     I request authority to search the SUBJECT DEVICE to seize the data contained therein, and to search that data for items specified in ATTACHMENT B (which is incorporated herein by reference) which may be found, and to seize all items listed in ATTACHMENT B as contraband, evidence, fruits, and instrumentalities of a crime.

     5.     I have probable cause to believe that contraband, evidence, fruits, and instrumentalities, or property designed for use in committing a crime, namely violations of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography); and 18 U.S.C. § 1466A (obscene visual representations of the sexual abuse of children) are located within the SUBJECT DEVICE. I submit this application and affidavit in support of a

2

search warrant authorizing a search of the entirety of the data contained within the SUBJECT DEVICE.

6.      This affidavit is based on information I have gained from my investigation, as well as information provided by other law enforcement agents and others involved in this and other investigations. Because I am submitting this affidavit for the limited purpose of securing the requested search warrant, I have not included each and every fact known to me concerning this investigation.  Instead, I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband, evidence, fruits and/or instrumentalities of violations of, or property designed for use in violating 18 U.S.C. § 2252A(a)(5)(B) and 18 U.S.C. § 1466A are located within the SUBJECT DEVICE.

### DEFINITIONS

7.      The following definitions, inclusive of all definitions contained in 18 U.S.C. § 2256, apply to this affidavit and Attachment B:

     a.  "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."  18 U.S.C.  § 1030(e)(1).

     b.  "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral

3

input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

c. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

d. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

e. "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. It commonly includes programs to run operating systems, applications, and utilities.

f. "Internet Protocol Address" or "IP Address," as used herein, refers to a unique number used by a computer to access the Internet. IP Addresses can be "dynamic," meaning that the Internet service provider assigns a different unique number to a computer every time it accesses the Internet. IP Addresses might also be "static," if an Internet service provider assigns a user's computer a particular IP Address that is used each time the computer accesses the Internet. IP Addresses are registered to specific individuals or entities, such as an

4

Internet service provider. When a subscriber of an Internet service provider wishes to access the Internet via their service, the Internet service provider will assign that account an IP Address which identifies that account holder on the Internet. By providing the Internet service provider with the dates, times and IP Addresses which a suspect used to access the Internet, the Internet service provider will be able to provide the identifying information for the account holder who was assigned that specific IP Address, at that date and time, if the records still exist on their system.

g. "Internet service providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

h. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, such as electrical, electronic or magnetic form (including, but not limited to, tape recordings, compact discs, hard disks, CD-ROMs, digital video disks (DVDs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, or electronic notebooks, as well as digital data files from any magnetic, electrical or electronic storage device).

## BACKGROUND ON COMPUTERS, DIGITAL MEDIA & CHILD PORNOGRAPHY

8.     Based on my knowledge, training, and experience in child exploitation and child pornography investigations, computers, computer technology, other digital electronic storage devices, and the Internet have revolutionized the manner in which individuals seek to access and exploit children, as well as their ability to produce, distribute, and collect child pornography. Moreover, with the advancement of so-called

5

"smart" mobile phones, which perform the same functions, and often employ the same programs, as computers, users are able to transport, conceal, and have almost constant access to the Internet. Smart phones also enable consistent and real-time communication over a number of electronic, audio, and video platforms.

9.      Computers and other digital electronic media basically serve five functions in the realm of child pornography and child exploitation: production, communication, distribution, storage, and social networking.

10.     Child pornographers can transpose photographic images from a film camera into a computer-readable format with a scanner. With digital cameras, the images can be transferred directly onto a computer and/or other digital media. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Through the Internet, electronic contact can be made to literally millions of computers around the world.

11.     The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The storage size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution. In addition, electronic devices such as smart phones (e.g., Apple iPhones), connected devices (e.g., Apple iTouch), e-readers, and tablets (e.g., Apple iPads, Kindle Fire) now function essentially as computers with the same abilities to store images and videos in digital form.

12.     The Internet affords collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

13.     Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides email services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer or device with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer or device. Even in cases where online storage is used, in most cases evidence of child pornography can be found on the user's computer or device.

14.     As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by saving an email as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. Computer files or remnants of such files can be recovered months or even years after

7

they have been downloaded onto a hard drive, deleted, or viewed via the Internet.

Electronic files downloaded to a hard drive can be stored for years at little or no cost.

Even when such files have been deleted, they can be recovered months or years later

using readily available forensic tools.  When a person "deletes" a file on a home

computer, the data contained in the file does not actually disappear; rather, that data

remains on the hard drive until it is overwritten by new data.  Therefore, deleted files,

or remnants of deleted files, may reside in free space or slack space – that is, in space on

the hard drive that is not allocated to an active file or that is unused after a file has been

allocated to a set block of storage space – for long periods of time before they are

overwritten. In addition, a computer's operating system may also keep a record of

deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via

the Internet are automatically downloaded into a temporary Internet directory or

"cache." The browser typically maintains a fixed amount of hard drive space devoted to

these files, and the files are only overwritten as they are replaced with more recently

viewed Internet pages.  Thus, the ability to retrieve residue of an electronic file from a

hard drive depends less on when the file was downloaded or viewed than on a

particular user's operating system, storage capacity, and computer habits.

15.    Because the attempted enticement and coercion of minors is illegal, as is

the production, receipt, distribution, and possession of child pornography, individuals

who seek sexual gratification from the exploitation of children must be cautious about

their communications and online activity.  An individual can use the computer or other

8

digital electronic media in the privacy of his/her own home or office to locate and

interact with other like-minded individuals, including individuals trading in child

pornography. Moreover, an individual can do so without revealing his/her true

identity. The use of computers and other digital electronic media devices provide

individuals interested in child exploitation with a convenient method of storing their

communications, information about the others with whom they communicate, and their

child pornography collections.

     16.     Searches and seizures of evidence from smart phones, computers, and

other digital devices commonly require agents to download or copy information from

the device to be processed later by a qualified computer expert in a laboratory or other

controlled environment. This is almost always true because of the following three

reasons:

    a.  Computers, smart phones and computer storage devices (like hard disks, diskettes, tapes, laser disks, magnetic opticals, and others) can store the equivalent of thousands of pages of information. When the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

    b.  Searching digital devices for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of available hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data.

c. The search of a computer system, and other digital devices, is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since this evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

17. When identifying material containing child pornography, one means that files can be identified and matched is through what is called a "hash value." Using a complicated algorithm, the hash value of a file can be displayed as a series of hexadecimal characters. One common format for this is the MD5 (Message Digest) hash, which contains 32 characters. The number of combinations of these characters is so vast that the hash analysis is millions of times more accurate than DNA or fingerprinting. If a change is made to even one pixel in an image, the hash value will change completely. Changing the name or file extension will not change the hash value. If two files share the same MD5 hash file, they are the same file.

18. I have conducted numerous investigations related to the possession, production and distribution of child pornography. At least a dozen of these investigations involved the suspects of those investigations producing and/or possessing child pornography on their cell phone. I am aware that mobile devices, such as tablets, laptops, and cell phones, are portable, capable of being stored or left in a vehicle, and have the capability to access the Internet.

10

**Internet Protocol Address**

19.     The Internet is a worldwide system of computer networks - a network of networks - in which users at any one computer can, if they have permission, get information from any other computer (and sometimes talk directly to other computer users).

20.     An Internet Protocol address (also known as an IP address) is a set of numbers which identify a computer on the Internet.  Standard IPV4 IP addresses follow the format of ###.###.###.###1  wherein each of the numbers are between 0 and 255. Computers use IP addresses to identify each other on the Internet. Internet Protocol addresses are registered to specific individuals or entities, such as an Internet service provider.

21.     When a subscriber of an Internet service provider wishes to access the Internet via their service, the Internet service provider will assign that account an IP address which identifies that account holder on the Internet.  By providing the Internet service provider with the dates, times and IP addresses which a suspect used to access the Internet, the Internet service provider will be able to provide the identifying information for the account holder who was assigned that specific IP address at that date and time, if the records still exist on their system.

---

1       As set in the protocol TCP/IP V4 which is the common usage today.

11

## BACKGROUND OF INVESTIGATION AND PROBABLE CAUSE

22.      On February 25, 2011, offender David ROBERTSON was sentenced to 120 months incarceration by the Honorable Joe B. McDade, U.S. District Judge, in Peoria, Illinois, for Receipt of Child Pornography. Upon release, he was ordered to serve a lifetime of supervised release.

23.      On August 30[2], 2019, offender Robertson was released from Bureau of Prisons custody and commenced his term of supervised release in the Central District of Illinois. During December 2019, he was being supervised by United States Probation Officer ("USPO") Jessica Almonte from the Peoria, Illinois office.  One of the special conditions of ROBERTSON's supervised release states:

> a. SPECIAL CONDITION NO. 1: You shall allow the probation office to conduct periodic unannounced examinations of your computer equipment and/or any communication device including but not limited to cellular telephones and residence. This may include retrieval and copying of all data from your computer to ensure compliance with this condition and/or removal of such equipment for the purpose of conducting a more thorough inspection.

24.      On January 7, 2020, USPO Almonte learned from ROBERTSON's case worker at his living center that he had failed to return to the center the night before and that he had been looking at inappropriate material at Goodwill Industries in Peoria, Illinois (hereinafter "Goodwill"). On that same date, USPO Almonte met with Johanna Wagner, Assistant Director of Program Services with Goodwill. Wagner informed

---

[2] According to the Petition for Warrant for Offender Under Supervision, Robertson's supervision commenced August 30, 2019.  According to SUSPO Cour's report, it commenced on September 23, 2019. In either scenario, Robertson was subject to full conditions of supervised release in December 2019.

Almonte that on December 16, 2019, ROBERTSON was using computer station VET 18

in Goodwill Industries' computer lab, located at 2319 E. War Memorial Drive, Peoria,

Illinois, to access inappropriate material. ROBERTSON had previously been granted

permission to access these computers for employment information only, and USPO had

been given the impression that Goodwill placed sufficient blocks on their computers to

prevent access to an inappropriate content on the Internet.

25.    USPO Almonte learned from Wagner that on December 16, 2019,

Goodwill staff became aware that someone had used computer(s) in their lab to access

"inappropriate material" and printed some pages containing obscene material. The

Goodwill lab's printer had malfunctioned, and the suspect user had not been able to

retrieve all of the printed material.  Instead, the printed material was found by another

user and turned over to Goodwill staff.  Goodwill staff was able to pinpoint the activity

of the obscene material to ROBERTSON at the VET18 computer station.

26.    Based on this, Goodwill banned ROBERSTON from further use of the

computer lab on December 23, 2019.  At that time, ROBERTSON met with and admitted

to Wagner and Goodwill staff members R. Reed and J. Horton that he had been using

Goodwill's facilities and computers to find inappropriate things on the computers.

27.    Wagner provided USPO Almonte copies of the sign-in logs for the

computer lab, a list of blocked websites from December 6, 2019 that contained sexually

suggestive websites, and seven pages of the printed obscene materials found on

December 16, 2019.  These were placed into USPO evidence.

13

28.     On January 7, 2020, ROBERTSON reported to the U.S. Probation Office in

Peoria, Illinois, and admitted to USPO Almonte that he was searching for, viewing,

downloading, and printing child exploitation materials at Goodwill Industries in

Peoria, Illinois.  This location is within the Central District of Illinois. ROBERTSON

further admitted that the printed materials containing child exploitation were his, and

that the printer had malfunctioned.  ROBERTSON further admitted to downloading

child exploitation imagery to a USB device, which he would view later on a DVD

player. ROBERTSON stated that he (ROBERTSON) threw the USB drive away.

29.     On January 8, 2020, officers from the U.S. Probation Office conducted an

inspection at ROBERTSON's area at the Adams Street Living Center in Peoria, Illinois

(within the Central District of Illinois). The SUBJECT DEVICE listed in ATTACHMENT

A was discovered to be under ROBERTSON's control, within a hair trimmer kit inside

ROBERTSON's closet at the Adams Street facility.  USPO also found a portable DVD

player but did not find any flash drive or additional media besides the SUBJECT

DEVICE.  The DVD player did have a USB port to read USB/flash-drive type media.[3]

The SUBJECT DEVICE was placed into USPO evidence.

30.     Based upon the violations of the terms of ROBERTSON's supervised

release, the devices were given a cursory examination by Supervisory U.S. Probation

Officer Jim Cour on February 11, 2020. SUSPO Cour reported observing hundreds of

---

[3] The portable DVD player was not seized by USPO and, on March 10, 2020, I learned that Adams Street
Living Facility staff threw it away after no one claimed it on Robertson's behalf for 30 days.

14

images and videos, with the majority of them being deleted.  SUSPO Cour observed

numerous deleted files with filenames indicative of child pornography but did not

attempt to view the content of the files. These filenames contained terms that are known

to law enforcement to be associated with images of child pornography, including terms

such as "lolita", "r@ygold, "pedo" (pedophile), "pthc" (pre-teen hardcore), "8yo"

(referring to an 8-year-old child), and "12yo" (referring to a 12-year-old child). One full

filename observed by USPO Cour was: "(Pthc) R@ygold Incest Mom Blows Her 12Yyo

(sic) Son sucks cum.mp4". Another filename observed by SUSPO Cour was: "(pthc)

Family 2 – ReelFamilySex – entire clip – Hot Mother licks her 8yo Daughters sweet

pussy as her brother fucks her – r@ygold-ddoggprn – incest REELKIDDYMOV(1).jpg".

SUSPO Cour also noted that the SUBJECT DEVICE contained images of anime

containing visual representations of sexual abuse of children.  Based on the evidence of

child exploitation, SUSPO ceased his forensic analysis.

31.     On March 10, 2020, along with Special Agent Shane Hornibrook of the

U.S. Secret Service, I met with USPO Almonte at the U.S. Probation Office in Peoria,

Illinois. I viewed some of the images recovered from the printer at Goodwill Industries,

which ROBERTSON had admitted to printing.  The seven sheets of paper contained

anime images in a storyboard format, similar to a comic book. These images portrayed

young, prepubescent females involved in acts of sexual penetration by adult males,

including violent forcible acts of vaginal penetration. In my training and experience,

these images met the standard for obscene visual representations of the sexual abuse of children, as defined in 18 U.S.C. § 1466A.

32.     In my training and experience, I am aware that viewers and producers of child pornography tend to be collectors. Typically, these individuals will store the images they have downloaded and/or created, either on the local system that was used to view the files, or on external storage in a location accessible to that individual. Here, ROBERTSON admitted he had downloaded child pornography to a flash drive but stated he had purportedly thrown it away prior to the USPO search of his living space.

33.     Based on my training, experience, and understanding of the cursory search conducted in this case, I believe that the forensic search conducted by the U.S. Probation Office of the SUBJECT DEVICE may have failed to reveal all content qualifying as child pornography or the obscene visual representations of the sexual abuse of children. With the training, software, and equipment available to me, it is possible that I will be able to recover additional files containing images of child pornography and/or obscene visual representations of the sexual abuse of children, which were not visible during the examination conducted at the U.S. Probation Office. I believe that with my training and equipment, I may be able to recover the deleted files noted by Cour during his examination of the SUBJECT DEVICE.

## CONCLUSION

34.    Based on the above information, there is probable cause to believe that the items described in ATTACHMENT B are presently contained within the SUBJECT DEVICE, which are in secure storage at the U.S. Probation Office in Peoria, IL, as set forth and depicted in ATTACHMENT A; and that these items constitute contraband, evidence, fruits, and instrumentalities, as well as property designed for use in committing a crime, and namely violations of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography) and 18 U.S.C. § 1466A (obscene visual representations of the sexual abuse of children).   Accordingly, I respectfully request that the Court authorize the USPO turn over custody of the SUBJECT DEVICE to me and subsequently authorize the search of the listed SUBJECT DEVICE and the seizure of the contraband, evidence, fruits, and instrumentalities of the above violations of federal law.

s/Scott Gamboe

SCOTT GAMBOE
Special Federal Officer
United States Secret Service

Sworn and subscribed to me telephonically pursuant to Fed. R. Crim. P. 41(d)(3) and Rule 4.1 this 10th day of March, 2020 at 2:30 PM (Central Standard Time).

s/Jonathan E. Hawley

HONORABLE JONATHAN HAWLEY
UNITED STATES MAGISTRATE JUDGE
CENTRAL DISTRICT OF ILLINOIS

**ATTACHMENT A**
**DESCRIPTION OF LOCATION TO BE SEARCHED**

The SUBJECT DEVICE is located in secure storage at the United States Probation Office at 100 NE Monroe St #314, Peoria, Illinois, which is in the Central District of Illinois. Specifically, it is described as:

1. A SanDisk Memory Stick Pro Duo, 1 GB, with serial number BB0629004214D.

**ATTACHMENT B**
**DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED**

1.     Evidence identifying individual(s) who used, owned, or controlled the electronic device(s) and computer(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and Internet Service Provider accounts.

2.     Any and all notes, documents, records, computer files or correspondence, in any format and medium (including, but not limited to, email messages, chat logs and electronic messages) pertaining to 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography) or 18 U.S.C. § 1466A (obscene visual representations of the sexual abuse of children), including communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography or membership in online groups, clubs, or services that provide or make accessible child pornography to members.

3.     Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

4.     Any and all notes, documents, records, computer files or correspondence, in any format and medium (including, but not limited to, e-mail messages, chat logs and electronic messages) pertaining to the enticement, coercion, or sexual exploitation of minors, including communications between individuals about trafficking of materials that constitute child pornography, grooming children, engaging in sexually explicit

2

conduct with children, ads on websites seeking sexual contact with children, or the existence of sites on the Internet that cater to those with an interest in child exploitation.